FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 24, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DANIEL WILLIAM H., JR.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  2:18-CV-00091-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 14. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, and his application for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 20. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the

Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed his application for Disability Insurance Benefits on June 28, 2014, and his application for Supplemental Security Income on September 23, 2014. *See* AR 282-283, 285-300. His alleged onset date of disability was April 12, 2010. AR 282, 285. Plaintiff's applications were initially denied on December 1, 2014, *see* AR 127-156, and on reconsideration on March 26, 2015. *See* AR 157-186. A hearing with Administrative Law Judge ("ALJ") Stewart Stallings occurred on February 16, 2017.[1] AR 59. On August 30, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits or supplemental security income. AR 17-33. On January 10, 2018, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's ruling the final decision of the Commissioner. AR 1-6.

On March 9, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

*///*

---

[1] Plaintiff proceeded *pro se* at the hearing and obtained representation about a month after the ALJ issued the opinion. *See* AR 13, 59.

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*,

261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 41 years old on the alleged date of onset. AR 128. He graduated from high school, attended some college, and can communicate in English. AR 31, 68, 1010. Plaintiff has past work in electronics sales, cellular telephone sales, and as a limousine driver. AR 31, 357, 363.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from April 12, 2010 (the alleged onset date) through August 30, 2017 (the date the ALJ issued his decision). AR 20, 32-33.

**At step one**, the ALJ found that Plaintiff had engaged in substantial gainful activity for three months in 2014, but had not throughout the remainder of the relevant period (citing 20 C.F.R. § 404.1571 *et seq*.). AR 22.

**At step two**, the ALJ found Plaintiff had the following severe impairments: morbid obesity, diabetes mellitus with neuropathy, sleep apnea, chronic pain,

hypertension, history of gout (currently well-controlled), hearing loss with good speech discrimination, chronic sinus issues, medication side effects, depression, and anxiety (citing 20 C.F.R. § 404.1520(c)). AR 23.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 26.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), including the abilities to lift up to 50 pounds occasionally and lift and carry up to 25 pounds frequently. AR 27. The ALJ found that Plaintiff would need a sit/stand option at his workstation for 5 minutes every half hour. AR 27. However, the ALJ found that Plaintiff could never climb ladders, ropes, or scaffolds, and would need to avoid any exposure to extreme cold, extreme heat, extreme wetness and humidity, and unprotected heights. AR 27. With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff would need to work a low stress job and could not work in positions that involved dangerous circumstances, managing others, sales, or customer service. AR 27. The ALJ found that Plaintiff could only have brief and superficial interaction with the public and with coworkers, could not work on a team or in tandem, and could only occasionally interact with supervisors. AR 27.

Given these physical and psychological limitations, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 31.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. AR 31. These included a production assembler, electronics worker, and cannery worker. AR 32.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 12 at 11. Specifically, he argues the ALJ: (1) did not fulfill his duty to fully and fairly develop the record; (2) improperly discredited his subjective pain complaint testimony; and (3) improperly evaluated and weighed the medical opinion evidence. *Id.*

## VII.   Discussion

### A.    The ALJ Fully and Fairly Developed the Record

Plaintiff argues that the ALJ failed to fully and fairly develop the record because the ALJ did not obtain reports from two mental health providers. *See* ECF No. 12 at 11-12. Plaintiff also contends that the ALJ failed to question him about all his physical and mental symptoms and limitations. *Id.* at 12.

ALJs have an independent duty to fully and fairly develop the record and assure the claimant's interests are considered. *See* 20 C.F.R. § 404.1545(a)(3); 20

C.F.R. § 404.1512(b); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

This duty is heightened if a claimant is not represented by counsel. *Celaya v.*

*Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). ALJs may discharge this duty to

develop the record by subpoenaing the claimant's physicians, submitting questions

to the claimant's physicians, continuing the hearing, or keeping the record open

after the hearing to allow for supplementation of the record. *See Tonapetyan*, 242

F.3d at 1150.

However, ALJs do not have a duty to develop the record about issues that

claimants themselves do not raise. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th

Cir. 2001); *Littlejohn v. Astrue*, No. ED CV 07-1614-SH, 2009 WL 700031, at *3

(C.D. Cal. 2009). Claimants also have a duty to inform ALJs of evidence

supporting their claims. *Rachel S. v. Berryhill*, No. C18-5377 RSL, 2019 WL

1013469, at *6 (W.D. Wash. 2019). For example, when a claimant indicates at a

hearing that a medical provider has no additional records, the ALJ is entitled to

rely on that representation and is not required to investigate further. *See id.*;

*Jackson v. Astrue*, No. ED CV-07-1609 PJW, 2009 WL 1740679, at *2 (C.D. Cal.

2009).

*///*

*///*

Plaintiff argues that the ALJ failed to fully develop the record because the ALJ did not obtain: (1) the report of Kristen Sims-Cutler, Ph.D. (dated October 20, 2017), AR 43-44; and (2) the report of John Arnold, Ph.D. (dated January 10, 2017), AR 45-49. *See* ECF No. 12 at 11-12.

As an initial matter, the first report Plaintiff argues the ALJ failed to obtain—the report of Dr. Sims-Cutler—is dated October 20, 2017. *See* AR 43. This was nearly two months *after* the ALJ issued his opinion. *See* AR 17 (opinion dated August 30, 2017). It is unclear how the ALJ could have obtained and considered this report when it did not yet exist.

But in any event, the ALJ did not fail to fully develop the record because Plaintiff did not identify these two providers to the ALJ, despite being specifically asked. At the beginning of the hearing, the ALJ asked Plaintiff if he had any more recent medical records in addition to the ones contained in the file, which had been previously organized and given to him. AR 64-65. Plaintiff said he did, from Spokane Ear Nose & Throat, Unified Family Clinic, Sacred Heart Medical Center, and Rockwood Eye Clinic. AR 66. The ALJ advised Plaintiff that he would obtain these additional records and might schedule another hearing, depending on what the records revealed. AR 66. Later, during the discussion of Plaintiff's mental health, Plaintiff advised that he had an onsite counselor for his depression at Unified Family Clinic. AR 76. The ALJ again stated that he would obtain these

records and asked Plaintiff to send a letter if he remembered having any additional medical records that were not mentioned or in the file. AR 77, 87. At the conclusion of the hearing, Plaintiff said he remembered one additional provider he had seen: Dr. Todd Green, a sleep specialist at Providence Pulmonary. AR 102. After the hearing, the ALJ obtained all of these medical records from the additional providers Plaintiff identified and then analyzed them in the written decision. *See* AR 26, 1231-1526.

To summarize: the ALJ asked Plaintiff what counselor he saw for depression, Plaintiff identified Unified Family Clinic, and the ALJ then obtained these records and appropriately analyzed them in the decision. *See* AR 26, 76, 1269-1475. Plaintiff argues that the ALJ never obtained reports from Dr. Sims-Cutler or Dr. Arnold, but Plaintiff never identified these providers despite being asked specifically if any additional records existed. Because the ALJ conducted a thorough inquiry to ensure the record was complete and was entitled to rely on Plaintiff's representations, the ALJ fulfilled his duty to fully develop the record. *See Rachel S.*, 2019 WL 1013469, at *6; *Jackson*, 2009 WL 1740679, at *2.

Plaintiff also argues that the ALJ failed to question him about all his physical and mental symptoms and limitations. ECF No. 12 at 12. This is incorrect. The ALJ first asked Plaintiff what mental issues, if any, impacted his ability to work. AR 71. After Plaintiff identified depression and anxiety, the ALJ asked

Plaintiff to describe his symptoms to the best of his ability, and then asked, "How does it feel to you?" AR 72. The ALJ asked follow-up questions, such as whether Plaintiff had any issues interacting with people. AR 72. The ALJ then repeated Plaintiff's answers to ensure he understood correctly. AR 73.

After the psychologist testified, the ALJ then asked Plaintiff what his physical problems were. AR 89. Plaintiff described his diabetes, neuropathy, and gout, and the ALJ then specifically asked Plaintiff what conditions kept him from being able to work full time. AR 89. The ALJ asked follow-up questions in response to Plaintiff's answers, inquiring about the status of Plaintiff's gastrointestinal issues and asking him to define medical terms. *See* AR 90-91. The ALJ also asked Plaintiff very specific questions about his diabetes, such as when he was diagnosed, what type he had, and whether he was insulin-dependent. AR 93. Plaintiff testified regarding his various conditions and symptoms at length and in detail. *See* AR 89-92. The ALJ again repeated Plaintiff's answers to ensure he understood correctly. AR 92.

Because the ALJ thoroughly inquired into the completeness of the medical record and was entitled to rely on Plaintiff's representations, and also thoroughly inquired into Plaintiff's physical and mental symptoms and limitations, the ALJ fulfilled his duty to fully and fairly develop the record.

*///*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

### B. The ALJ did not Improperly Reject Plaintiff's Subjective Complaints

Plaintiff argues the ALJ erred by discounting the credibility of his testimony regarding his subjective symptoms. ECF No. 12 at 12.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce some degree of the symptoms Plaintiff alleged. AR 28. However, the ALJ determined that the objective medical evidence did not explain the very limited lifestyle Plaintiff alleged at the hearing. AR 29.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 29. First, the ALJ reasoned that Plaintiff's allegations of completely debilitating physical limitations were inconsistent with his examination findings that his gait was normal. AR 29; *see* AR 541, 547, 591. An ALJ may discount a claimant's subjective symptom testimony when it is inconsistent with the medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan*, 242 F.3d at 1148.

Second, the ALJ discounted Plaintiff's subjective complaint testimony because of his noncompliance with recommended treatment. AR 29. Plaintiff's nurse practitioner opined that there was a direct correlation between Plaintiff's out-of-control diabetes and many of his physical conditions. AR 973. Despite this, the record contains numerous references to his lack of compliance with his providers' diabetes recommendations, such as not changing his diet or exercising. *See* AR 976, 1270, 1272, 1274, 1277, 1280, 1285, 1289, 1291, 1293, 1305, 1308, 1312, 1314. Plaintiff admitted he did not take his blood sugar very often, sometimes for up to two weeks at a time. AR 1288, 1304, 1308, 1314. He also stated he struggled

to control his blood sugar because unhealthy foods were "a pleasure for him" and made him feel better. AR 1291. He acknowledged this was because of his "poor choices." AR 1308. Dr. Nicholas Wiarda concluded that Plaintiff avoided positive health behaviors in part because of lack of motivation and poor follow-through. AR 1270. Dr. Wiarda also described Plaintiff's behavior as "learned helplessness." AR 1293. Plaintiff also did not take the medication his gastroenterologist prescribed, stating that he "[did] not understand the results of his tests and he [felt] 'overwhelmed' by all the medications he [was] on." AR 1270; *see also* AR 1274. He described his prescription medications as "poisons." AR 1272. Despite alleging debilitating depression, he also declined a mental health referral. AR 1310. His nurse practitioner noted that he was "not willing to be responsible for his behavior." AR 973. An ALJ may discount a claimant's subjective complaints when treatment is inconsistent with the level of complaints or a claimant is not following prescribed treatment without good reason. *Molina*, 674 F.3d at 1114; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). If a claimant's condition is not severe enough to motivate them to follow the prescribed course of treatment, this calls their alleged limitations into question. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)

Importantly, the ALJ noted that when Plaintiff followed his providers' advice by improving his diet and exercising regularly, his conditions improved and

he felt better. AR 29; *see* AR 504, 1294. An ALJ may find a claimant's subjective

symptom testimony not credible based on evidence of effective responses to

treatment. *See*, *e.g.*, *Burch*, 400 F.3d at 681; 20 C.F.R. §§ 404.1529(c)(3)(v),

416.929(c)(3).

Third, the ALJ discounted Plaintiff's subjective complaints of completely

disabling limitations because they were belied by his daily activities. AR 29. For

example, in 2015 Plaintiff was able to load and unload his truck full of car parts for

work. AR 1289. He was able to walk his four dogs. AR 1012, 1289.  He was able

to work outside. AR 1289. He was able to go to the YMCA and swim on a regular

basis. AR 1012, 1294. He was able to go to the gym and tried to go regularly, but

was "lacking energy." AR 474; *accord* AR 504, 1270, 1274, 1289. He was able to

care for his young daughter every other weekend, AR 978, 1004, 1011, and do

household chores like cooking, grilling, preparing sauces, carrying dirty laundry

downstairs, putting the laundry away, doing the dishes, shopping, driving, caring

for his dogs, and organizing and sorting boxes in his garage. AR 1011-12. He also

maintained gainful employment during parts of the period for which he claims

disability. *See infra* at 17. Activities inconsistent with the alleged symptoms—even

when they suggest some difficulty functioning—are proper grounds for

questioning the credibility of subjective complaints when the person claims a

totally disabling impairment. *Molina*, 674 F.3d at 1113; *see also Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(3)(i).

Finally, the ALJ discounted Plaintiff's subjective complaints because Plaintiff's lack of ongoing employment was likely due to factors unrelated to his allegedly disabling impairments. AR 29. Plaintiff worked in 2014 but was laid off after two months for not making sales quotas. AR 70-71, 1010. He then worked at an assisted living facility in 2016, but was laid off when "a new director came in and brought their own team." AR 70; *see also* AR 1312-13. After he was laid off, he sought new employment. AR 1313. Lack of ongoing employment due to factors unrelated to one's allegedly disabling impairments is a sufficient basis to discredit subjective pain testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Plaintiff fails to explain how the ALJ erred in relying on any of the above reasons for discrediting his subjective pain testimony. *See* ECF No. 12 at 12. Instead, Plaintiff argues that the ALJ erred by: (1) relying solely on the testimony of a non-examining, non-treating psychologist; and (2) not calling a physician at the hearing to testify about his physical diagnoses and limitations. *Id.* These arguments are unrelated to the issue of the ALJ discounting Plaintiff's subjective complaint testimony. Rather, they relate to the way the ALJ evaluated and weighed the medical opinion evidence. Accordingly, they are addressed in the appropriate section below. *See infra* at 20-22.

For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because the ALJ provided multiple clear and convincing reasons for doing so.

## C. The ALJ did not Err in Weighing the Medical Opinion Evidence

Plaintiff argues that the ALJ erred in evaluating and weighing the medical opinion evidence. ECF No. 12 at 12-14. Other than the two arguments outlined above, Plaintiff does not identify any actual provider or opinion that he believes the ALJ improperly considered. *Id.* Rather, Plaintiff articulates the standard for rejecting the contradicted testimony of a treating or examining doctor (the "specific and legitimate" standard) and then simply states, "here, that was not done." ECF No. 12 at 14.

Title II's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Holohan*, 246 F.3d at 1202. In addition, the regulations give more weight to

opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over those of non-specialists. *Id.*

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

An ALJ satisfies the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation marks omitted). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

Plaintiff baldly asserts, without explanation, that adherence to the "specific and legitimate" standard "was not done" here. ECF No. 12 at 14. Plaintiff fails to

specify which treating or examining doctor's opinion was contradicted or rejected. *See id.* But in any event, the ALJ still satisfied the "specific and legitimate" standard. The ALJ, over nine single-spaced pages, summarized Plaintiff's voluminous treatment records and the findings and opinions of his many medical providers. *See* AR 23-31. The ALJ explained in detail which medical opinions he found persuasive, which ones he did not, and why he found each one either persuasive or unpersuasive. *See* AR 29-31. For example, the ALJ assigned great weight to the opinions of providers who treated Plaintiff, who were particularly credentialed, who were specialists, who had extensive Social Security program knowledge, or who had access to the longitudinal treatment record. *See* AR 29-31. The ALJ gave less weight to the opinions of medical providers whose opinions conflicted with their own examination findings or were not sufficiently explained. *See* AR 30. Contrary to Plaintiff's conclusory assertion, the ALJ set out a detailed and thorough summary of the facts and conflicting evidence, stated his interpretation thereof, and made findings. The ALJ therefore satisfied the "specific and legitimate" standard.

As noted above, Plaintiff also argues the ALJ erred by relying solely on the testimony of Nancy Winfrey, Ph.D.—a non-examining, non-treating psychologist—in evaluating his mental limitations. ECF No. 12 at 12. He argues that a "non-examining physician's opinion cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)). While true, an ALJ may reject the opinion of a treating or examining doctor based *in part* on the testimony of a non-examining provider. *Lester*, 81 F.3d at 831. An ALJ only errs when he or she relies on a non-examining provider's opinion "with nothing more." *Id.* For example, an ALJ may properly reject a treating doctor's opinion when he or she relies on a combination of a non-examining provider's opinion, the claimant's test results, contrary reports from other doctors, and the claimant's testimony. *Id.*

That is what happened here. The ALJ relied heavily on non-examining psychologist Dr. Winfrey's testimony. AR 30. However, the ALJ also referenced the chart notes, examination findings, and observations of many other treating and examining providers, who all documented Plaintiff's normal mental status examinations, alertness and cooperation, normal mood, appropriate affect, normal attention span and concentration, normal judgment and insight, intact memory, organized thought, and denial of psychological symptoms. AR 30; *see* AR 472-73, 475-76 (Dr. Andrew Githaiga); 502-03, 508-09, 537-38 (Dr. Sean LaSalle); 590, 592 (Dr. Jeffrey Markin); 853, 856 (Dr. Mark Bauer); 972-73, 980-81 (Samantha Lowderback, ARNP); 1295, 1298, 1300, 1302, 1334 (Christie Ceballos, PA-C). The ALJ also relied in part on the opinion of examining psychologist Dr. John

Arnold, who opined that Plaintiff's prognosis was fair to guarded.[2] AR 30; *see* AR 1009-1012. Accordingly, Plaintiff's claim that the ALJ relied *solely* on the opinion of a non-examining provider fails.

Finally, as noted above, Plaintiff also argues that the ALJ erred by not calling a physician at the hearing to testify live about his physical diagnoses and limitations. ECF No. 12 at 12. However, when the medical record is sufficient to determine the extent of a claimant's impairments, live testimony from a medical expert is not required. *Crane v. Barnhart*, 224 F. App'x 574, 578 (9th Cir. 2007); *Albidrez v. Astrue*, 504 F. Supp. 2d 814, 820 (C.D. Cal. 2007). Here, the medical record contained extensive evidence of Plaintiff's physical limitations, including the opinion of his treating physician who opined that he could return to work at a desk job. AR 23-31, 517. The ALJ did not err by not calling a physician at the hearing to testify live about Plaintiff's physical diagnoses and limitations.

///

///

///

///

///

---

[2] This is a different report than the one referenced earlier in this order. *See infra* at 10. Dr. Arnold completed two separate reports: one dated November 12, 2014, AR 1009-1012 (the one referenced here), and one dated January 10, 2017 (the one discussed earlier). *See* AR 45-49.

## VIII. Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 24th day of July, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge